## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIM. NO. 2004/0077 |
| | ) | |
| VERNON GRANT, | ) | |
| HENRY ROGERS, | ) | |
| and LEROY HARRIGAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

Finch, J.

      THIS MATTER comes before the Court on the timely Motion for Judgment of Acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure filed by Defendant Leroy Harrigan. Harrigan believes that the evidence was insufficient for a reasonably jury to find him guilty on Counts I and II. He also contends that because he was indicted in the conjunctive, but the jury was instructed and the verdict form was written in the disjunctive, the indictment was impermissibly amended so that the jury did not find the elements of the charged offenses beyond a reasonable doubt and the jury verdict was not demonstrably unanimous. Finally, Harrigan claims that the Court failed to properly poll the jury in response to a timely request and that, therefore, the jury did not return a proper verdict.

**I.    Sufficiency of the Evidence**

    **A.    Standard of Review**

     Review of the sufficiency of evidence supporting a conviction is "highly deferential." United States v. Hart, 273 F.3d 363, 371 (3d Cir. 2001) (citation omitted). The Court "must

determine whether the evidence submitted at trial, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." Hart, 273 F.3d at 371 (quotation omitted). "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." United States v. Iafelice, 978 F.2d 92, 94 (3d Cir. 1992) (quotation omitted). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt," may the Court overturn the jury's verdict. United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1990) (quotation omitted). Thus, a claim of insufficiency of the evidence places "a very heavy burden" on a defendant. United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990).

"To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilty." Id. (quotation omitted). "There is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." Iafelice, 978 F.2d at 97. All issues of credibility are within the province of the jury. Gonzalez, 918 F.2d at 1132; "It is not [the Court's] role to weigh the evidence to determine the credibility of witnesses." United States v. Cothran, 286 F.3d 173, 175 (3d Cir. 2002).

The Court views the totality of the circumstances when examining the sufficiency of the evidence. United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984). "The prosecution may fulfill its burden of proving the elements of a crime through circumstantial evidence." Paez v. O'Lone 772 F.2d 1158, 1160 (3d Cir. 1985); see Jackson v. Virginia, 443 U.S. 307, 324-25 (1979) (finding that necessary intent was proven beyond a reasonable doubt through circumstantial evidence); see also United States v. Wexler, 838 F.2d 88, 90 (3d Cir. 1988) (stating that

conspiracy can be proven through circumstantial evidence); Leon, 739 F.2d at 891 (finding that record had sufficient circumstantial evidence for jury to find defendant guilty of aiding and abetting substantive crimes charged); United States v. Martorano, 709 F.2d 863, 866 (3d Cir. 1983) (holding that constructive possession of controlled substance can be shown through circumstantial evidence). "It is not unusual that the government will not have direct evidence. Knowledge is often proven by circumstances. A case can be built against the defendant grain-by-grain until the scale finally tips; and considering all the facts and drawing upon rational inferences therefrom, a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime for which he is charged." Iafelice, 978 F.2d at 98. "Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred. The fact that evidence is circumstantial does not make it less probative than direct evidence." McNeill, 887 F.2d at 450 (citation omitted).

"The prosecution must prove every element of a crime charged beyond a reasonable doubt. . . ." Government of the Virgin Islands v. Smith, 949 F.2d 677, 682 (3d Cir. 1991). "[D]iminishing this burden violates a defendant's right to due process." Id. On a post-trial motion for acquittal based on the insufficiency of the evidence, the Court must determine whether there is substantial evidence, direct or circumstantial, with logical inferences drawn in the light most favorable to the government, from which a reasonably jury could have found beyond a reasonable doubt that the government proved all the elements of the offense. See United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991).

B.     Evidence as to the Conspiracy Counts.

There was extensive evidence presented to the jury to show the existence of both a conspiracy to import heroin and a conspiracy to possess with intent to distribute or to distribute cocaine. Two witnesses testified as to Harrigan's role in these conspiracies: Jassen Walters and Denise Simon. Walters stated that he had given Brennis Nesbitt an airline pass to travel from the United States to St. Maarten around June 2003 and that Denise Simon accompanied Nesbitt. Vol. III, 87:6-21.  According to Simon, Nesbitt and she carried two coolers with them.  Vol. II, 28:21-24.  When Nesbitt and Simon arrived in St. Maarten, Vernon Grant met them at the airport.  Grant took the coolers with him.  Vol. II, 29:20 – 30:9.

The jury learned from Walters about the process of converting two coolers to a single cooler for the purpose of transporting drugs into the United States:

> The practice was to take two coolers and make them into one.  The two coolers would be dismantled to make one.  He would cut the inner lining, using a rotor zim to take out that plastic part, and then discard it ,and then for the other he would cut the outer case, cutting the outer case, cleaning off the insulation inside. So from one cooler he would have a perfect lining, and then the other cooler, he'd just have the outer case with the insulation. So then he would just cut out the space necessary to put whatever he's going to put inside.  And then seal it back down from the lining from the other cooler.

Vol. III, 91:21 - 92:16.

After Grant left the airport with the coolers, Harrigan picked up Simon and Nesbitt.  Vol II, 30:9-17.  Harrigan drove them around St. Maarten, made a couple of brief stops, and took them to catch the ferry to Anguilla.  Vol. II, 31:3-10.

While they were in Harrigan's car, Simon heard Harrigan say that "he had to pick up the white lady later on."  Vol. II, 30:25 - 31:2.  Harrigan and Nesbitt were also "talking about

wrapping, wrapping the stuff in carbon paper so it wouldn't be, it wouldn't show through the x-ray machine." Vol. II, 31:25 - 32:6.  When Simon and Nesbitt returned to St. Maarten from Anguilla, Harrigan picked them up from the ferry dock, took them to Grant's house and then to a guest house.  Vol. II, 43:24 - 44:8.  The next day, Nesbitt and some friends picked up Simon at the guest house to take her to the airport. Vol. II, 32:21-23.  They stopped at Grant's house, where Grant placed a single cooler filled with fish in the car for Simon to take back to the United States with her.  Vol. II, 32:24 – 33:7.  Simon was arrested at JFK Airport, New York, for transporting cocaine and heroin in a cooler filled with fish.  Vol. II, 52:3-22.

      Walters testified that in December 2003 or January 2004, Nesbitt asked him to travel to St. Thomas to retrieve two kilograms of cocaine from Grant and to give them to Harrigan. Vol. III, 110:6 - 111:3.  Walters received only one-half kilogram of cocaine from Grant.  Vol. III, 111:4-6.  He then met with Harrigan in the Four Winds parking lot in St. Thomas and gave Harrigan the half.  Vol. III, 111:13-14.  The following day, Walters and Harrigan met at Harrigan's mother's house in St. Thomas and prepared the cocaine for transportation to the continental United States.  Vol. III, 111:15-20.  Harrigan recommended to Walters that because it was a small quantity, "rather than giving it to anybody and having to pay them, [Walters] could just push it in [his] back pocket and go up, and that's what [he] did." Vol. III, 111:17-20.  At Harrigan's suggestion, they used "menthol, like 'Icy Hot' to wrap the half key." Vol. III, 114:21-24.

      While Walters and Harrigan were at Harrigan's house they engaged in conversation. Harrigan told Walters that when he learned that Simon had been arrested, he told Nesbitt to bail her out and have her leave the country.  Vol. III, 113:21-24.  He also told Walters that when

5

Aguirre, another drug courier, had been arrested, he had gotten a call to pick her up from the boat terminal, but that he had been too late.  Vol. III, 113:25 - 114:3.

Finally, Harrigan related to Walters that when he had gone to give a kilogram of heroin to Grant, the heroin with which Simon was later caught, Grant was covered with a white substance. Vol. III, 112:8-14; 113:1-9; 168:15-18.  This substance was the insulation that Grant had been removing in the process of joining the two coolers into a single cooler to create a compartment for transporting drugs.  Vol. III, 112:11-14.

The sale of the half kilogram of cocaine that Walters brought to the United States was orchestrated in Baltimore by Anele Joseph, Harrigan's cousin.  Vol. III, 165:22-166:7.  The cocaine sold for about $11,000. Id.  Walters returned to St. Thomas after the half kilogram of cocaine was sold,  Vol. III, 166:9-13, and gave Harrigan his share – $6,500 in cash,  Vol. III, 160:1-8; 161:1-4.

Each element of a conspiracy must be proven beyond a reasonable doubt.  Wexler, 838 F.2d at 90.  "[T]he government must show in a conspiracy case . . . that the alleged conspirators shared a unity of purpose, the intent to achieve a common goal, and an agreement to work together toward the goal." Id. at 90-91 (quotation omitted).  Although the Government must prove that the defendant had knowledge of the illegal objective contemplated by the conspiracy, id. at 91, "[t]he government need not prove that each defendant knew all the details, goals, or other participants," United States v. Theodoropoulos,  866 F.2d 587, 593 (3d Cir. 1989).  "The elements of a conspiracy may be proven entirely by circumstantial evidence . . . ." Wexler, 838 F.2d at 90.

The evidence adduced at trial shows that Harrigan with others were involved in a

6

common scheme to import controlled substances, including heroin and cocaine into the United States and to distribute drugs. The drugs were concealed within coolers filled with fish. A series of drug couriers transported the drugs. Harrigan and others also conspired to distribute drugs within the United States.

Harrigan took steps to participate in the conspiracy to import controlled substances as a member of the conspiracy. Harrigan supplied a kilogram of heroin for Simon to transport from St. Maarten into the United States. Simon was intercepted, and the heroin confiscated. This evidence is sufficient for a reasonable jury to find the elements of a conspiracy to import heroin and Harrigan's involvement as a co-conspirator.

Harrigan also knew of and assisted in the conspiracy to import cocaine. He discussed packaging methods with Nesbitt and helped Nesbitt and Simon by taking them from the airport in St. Maarten to the St. Maarten-Anguilla ferry and by picking them up when they returned from Anguilla and taking them to Grant's house, where the drugs were packaged into the cooler, and then to a guest house.

Although the heroin and cocaine importation was not consummated in that instance, the Government's proof of conspiracy is sufficient. "Success . . . is not an essential element for a conspiracy conviction . . . ." United States v. Villarreal, 546 F.2d 1145, 1146 (5th Cir. 1977).

Undeterred by Simon's arrest, about six months later, Harrigan accepted one-half kilogram of cocaine from Walters. Harrigan and Walters worked together to repackage the cocaine for transportation. Walter used the method that Harrigan suggested to him to carry the cocaine. After the cocaine was distributed, Walters returned with Harrigan's $6,500 payment. This substantial evidence establishes the elements of a conspiracy to possess with intent to

distribute or to distribute cocaine and Harrigan's membership in that conspiracy. In addition, the evidence shows that Harrigan's heroin that Simon was transporting to the United States when she was intercepted was intended for distribution.

  C. Lack of Distinction Between Conspiracy to Distribute and Conspiracy to Possess with Intent to Distribute.

In Harrigan's Memorandum of Law in Support of Rule 29 Motion for Judgment of Acquittal, at 6-7, Harrigan states:

> The actual distribution was charged by the Government in the Fifth Superseding Indictment, and, consistent with that indictment, was also plainly stated in the Verdict Form. . . . In the absence of any evidence as to the actual distribution of cocaine and the actual distribution of heroin, no rational jury can find proof beyond a reasonable doubt as to the Defendant's guilt on Count One of the 5th Superseding Indictment.

Count One of the Indictment does not charge Harrigan with the distribution of heroin and cocaine, but rather with conspiracy to possess with intent to distribute and to distribute heroin and cocaine. The verdict form, similarly, does not charge Harrigan with narcotics distribution.

In his Reply Memorandum in Support of Rule 29 Motion for Judgment of Acquittal, at 5 Harrigan clarifies his argument. He explains:

> The Government charged two conspiracies in Count One. The first conspiracy involved possession with intent to distribute controlled substances. The second conspiracy involved distribution of controlled substances. No evidence was produced at trial with respect to the second conspiracy because no evidence was offered by any witness as to the distribution of controlled substances, all of the testimony was directed at the first conspiracy.

Harrigan draws a distinction between a conspiracy to distribute and a conspiracy to possess with intent to distribute where there is none.

 In <u>Moazzam v. United States</u>, 1996 WL 514866, at *1 (S.D.N.Y., Sept. 10, 1996), the

jury was instructed:

> Now, this idea of a conspiracy to possess with intent to distribute is a little bit of a clumsy concept. The main thing involved here is the idea of distribution and so I don't think it will do any violence to the indictment to speak of the conspiracy charged here as really being a conspiracy to distribute heroin. That is, for purposes of this case, essentially the same as talking about possession with intent to distribute.

In a ruling on a motion under 28 U.S.C. § 2255, the court approved of this instruction, explaining:

> The obvious reason for the court saying what it did is that it is logically impossible to conspire to possess with intent to distribute without conspiring to distribute. There is quite clearly a distinction between the substantive crime of possession with intent to distribute and the substantive crime of distribution. But the same does not hold true in connection with conspiracy.

Id. see also United States v. Diaz, 190 F.3d 1247, 1253 (11th Cir. 1999) ("If there is an agreement that any member of the conspiracy will possess the cocaine that is intended to be distributed, then the defendant as a member of that conspiracy is guilty of a conspiracy to possess with the intent to distribute. At the same time, he is a member of a conspiracy to distribute cocaine.").

Courts often identify an agreement to possess with intent to distribute as an alternate element to prove conspiracy to distribute. For example, in United States v. Lopez-Medina, 461 F.3d 724, 750 (6th Cir. 2006), the defendant was charged with conspiracy to distribute at least five kilograms of cocaine. The Sixth Circuit stated: "To sustain a conviction of conspiracy, the Government must prove (1) an agreement to distribute, or an agreement to possess with intent to distribute, cocaine, (2) Medina's knowledge and intent to join the conspiracy, and (3) Medina's participation in the conspiracy." In United States v. Dunmire, 403 F.3d 722, 723 (10th Cir.

9

2005), the defendant was indicted for conspiracy to knowingly and intentionally distribute in excess of fifty grams of crack cocaine. The Tenth Circuit recited the elements as: "(1) an agreement between Defendant and at least one other person to possess with the intent to distribute five or more grams of crack cocaine, (2) knowledge by Defendant of the essential elements of the conspiracy, (3) knowing and voluntary involvement with the conspiracy, and (4) an interdependence among the conspirators." Id. at 724. Thus, in the Dunmire case, the court did not even mention an agreement to distribute as an element of conspiracy to distribute, but indicated that the crime could be proven by showing an agreement to possess with intent to distribute. See also United States v. Stephens, 482 F.3d 669, 672-73 (4th Cir. 2007) ("To prove conspiracy to distribute cocaine, the government must establish that: (1) an agreement to possess cocaine with intent to distribute the substance existed between two or more persons . . . .").

The reason that there is no distinction between a conspiracy to distribute and conspiracy to possess with intent to distribute is that a conspiracy is a specific intent crime. See United States v. Merriweather, 78 F.3d 1070, 1078 (6th Cir. 1996). Conspiracy to possess with intent to distribute is subsumed within conspiracy to distribute. See United States v. Maholias, 985 F.2d 869, 879 (7th Cir. 1993) ("Conspiracy to distribute is a specific intent crime; that is, the government must prove that the defendant conspired to distribute, with the intent to distribute, a controlled substance."). By proving conspiracy to possess with intent to distribute, the government has also proven conspiracy to distribute.

**II.     Inconsistencies between Indictment, Instructions and Verdict Form**

Harrigan argues that "[t]he wording of the Verdict Form as to Leroy Harrigan . . . is

inconsistent with the charges specified in the 5th Superseding Indictment and is therefore constitutionally deficient as a matter of law." Mem. in Supp., at 3.  According to Harrigan, "the Verdict Form did not ask the jury to find the Defendant guilty beyond a reasonable doubt as to all the matters charged against him, and instead allowed a finding of guilt on something significantly less." Id. at 4.

Harrigan challenges the general practice, which was employed in this case, of obtaining an indictment with the means of committing the crimes or the objectives of a conspiracy stated in the conjunctive, and permitting the jury to reach its decision, considering the means of committing the crimes or the objectives of a conspiracy in the disjunctive.  The Fifth Superseding Indictment charges Harrigan with conspiring to possess with intent to distribute and to distribute in Count I and with conspiring to import in Count II, "five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, **and** one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance." (emphasis added).  Although these two crimes involving cocaine and heroin were charged in the conjunctive, the jury was instructed, and the verdict was given, in the disjunctive.  The jury was instructed that to find Harrigan guilty of Count I, it must find an agreement or understanding which "involved five (5) kilograms or more of a mixture or substance containing cocaine, **or** one kilogram or more of a mixture or substance containing heroin." Vol V, 37:6-9 (emphasis added).  The Court issued a similar instruction as to Count II.  Vol V, 39:5-8.  The verdict form similarly reads in the disjunctive.

Although Harrigan has not pointed to any objection he made to the jury instructions or verdict form at trial, failure to object does not foreclose review if the instructions as given or the

verdict form constitute plain error. Fed. R. Crim P. 52(b). "[I]f a jury charge impermissibly amends the indictment, plain error is apparent." United States v. Muelbl, 739 F.2d 1175, 1178 (7th Cir. 1984); see United States v. Vampire Nation, 451 F.3d 189, 204 (3d Cir. 2006).

At the outset, the Court notes that "[a] single conspiracy to commit different drug offenses is a single criminal offense." United States v. Muelbl, 730 F.2d 1175, 1182 (7th Cir. 1984) (quotation omitted). It would have been improper to have charged Harrigan in two separate counts for different objectives of the same conspiracy. Id. In other words, the conspiracies were properly charged; i.e., conspiracy to import heroin and conspiracy to import cocaine could not have been charged in separate counts.

When jury instructions allow the defendant to be convicted of an offense different from or in addition to the offenses alleged in the indictment, they cause a constructive amendment of the indictment in violation of the Sixth Amendment right to due process. United States v. Barrios-Perez, 317 F.3d 777, 779 (8th Cir. 2003). However, when the challenged instruction does not alter the number or nature of the crimes for which the defendant may be convicted, no constructive amendment has occurred. Id. at 780.

In United States v. Muelbl, the defendant was indicted for a conspiracy to unlawfully distribute, dispense, and posses with intent to distribute marihuana, cocaine and methaqualone. Id. at 1178. The trial court instructed the jury:

> In order to convict the defendant, you must unanimously find that the defendant willfully became a member of the conspiracy and that the conspiracy had as its object the distribution, or dispensation, or the possession with the intent to distribute marijuana, cocaine, or qualudes. You may also find the defendant guilty if you find that he willfully became a member of the conspiracy which had as its object the distribution, or dispensation, or the possession with the intent to distribute all three drugs, or any combination thereof.

Id. at 1179. The defendant in the Muelbl case, argued as Harrigan does here, that the jury was required to find a conspiracy to distribute each and every one of the three controlled substances, and that charging the jury in the disjunctive constitutes constructive amendment of the indictment. Id.

    The Seventh Circuit held:

> It is clear to this court that when the grand jury indicted the defendant for conspiracy to violate federal drug laws with regard to these three drugs, that it also charged a conspiracy to distribute and possess with intent to distribute each of these drugs individually. It simply defies logic to assert that the grand jury did not find a conspiracy to distribute with respect to each of these drugs individually, but rather found only a conspiracy to distribute all of the drugs collectively.

Id. at 1181. "[I]f the grand jury thought the evidence before it sufficient to charge defendant with a conspiracy involving two drugs, a fortiori it must have thought that evidence sufficient for find a conspiracy involving one of those drugs." Id. at 1182 (quotation omitted).

    In United States v. Barrios-Perez, 317 F.3d 777, 779 (8th Cir. 2003), the defendant similarly contended "that the indictment had been constructively amended because it was phrased in the conjunctive, whereas the district court instructed the jury in the disjunctive." The Eighth Circuit ruled that "[a]n instruction that requires the jury to find a conspiracy to distribute marijuana or cocaine, or both, does not permit the jury to convict the defendant of an offense different from that charged in the indictment," conspiracy to distribute a controlled substance. Id. at 780.

### III. Unanimity of the Jury Verdict

    Harrigan reasons:

> [T]he use of the word "or" allows a jury to return a guilty verdict where there are

13

> 4,096 possible combinations of juror thought, only two of which provide a truly unanimous decision. While the Government may like those odds, the Constitution provides otherwise. Even if this Court is inclined to conclude that the jury did not have to find the Defendant guilty as to both heroin and cocaine, *at a minimum the jurors must agree on the particular controlled substance*, and the Verdict Form is fatally deficient in that respect.

Reply Mem. at 2.

In the Third Circuit, the jury must be unanimous as to which predicate act supports its verdict:

> When the government chooses to prosecute under an indictment advancing multiple theories, it must prove beyond a reasonable doubt at least one of the theories to the satisfaction of the entire jury. It cannot rely on a composite theory of guilt, producing twelve jurors who unanimously thought the defendant was guilty but who were not unanimous in their assessment of which act supported the verdict. Conviction by a jury that was not unanimous as to the defendant's specific illegal action is no more justifiable than is a conviction by a jury that is not unanimous on the specific count. In this case, the permutations that can support a valid conviction are varied and several. What may not vary, however, is the required unanimity of each aspect of the jury's finding. We are convinced that the sixth amendment requires such unanimity, and we must be certain that the jury was properly instructed to achieve it.

United States v. Beros, 833 F.2d 455, 462 (3d Cir. 1987).

Harrigan contends that the jury may not have been unanimous as to the crime they found that Harrigan had committed. The only assurance that the Court can have that the jury verdict was unanimous is that the jury followed its instructions concerning unanimity. However, the Court gave only general unanimity instructions, without specifying to the jury that it must be unanimous in concluding that Harrigan committed one of the disjunctive acts.

In Muelbl, the district court emphasized that the jury had to unanimously arrive at the verdict:

> Now, there are several alternatives that are included in the indictment,

14

> namely, marijuana, cocaine, or qualudes, and I urge you to make sure that the jury is unanimous as to any one or more than one of those three items before you can enter a verdict of guilty. In other words, if all twelve of you do not agree as to the several alternatives, even though you are not agreed on all three of them, but if twelve of you are agreed on one or more, then you have arrived at a verdict that would warrant your entering a finding of guilty; but if some of you agree as to one item and some of you as to another, that's not unanimity; or, put it another way, if three of you agree that there was a conspiracy to distribute marijuana and five of you agree that there was a conspiracy to distribute cocaine, and then another small number, five of you, agree that there was, or four of you agreed that there was a conspiracy to distribute qualudes, that would not constitute unanimity.

Muelbl, 739 F.2d at 1179.

Although a specific instruction, such as that given in Muelbl would have encouraged juror unanimity, Harrigan did not request such a specific instruction at trial.

> Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error.  It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.

Henderson v. Kibbe,  431 U.S. 145, 154 (1977) (footnotes omitted).  Absent an objection, plain error review applies.  See Fed. R. Crim. P. 52(b).  Under the plain error standard, when an objection was not made at trial, the court must find (1) an error; (2) that is plain; and (3) that affected substantial rights.  See United States v. Dobson,  419 F.3d 231, 236 (3d Cir. 2005).

"[I]n any case where a count will be submitted to the jury on alternative theories, prudence counsels the trial court to give an augmented unanimity instruction if the defendant requests such a charge." United States v. Ryan, 828 F.2d 1010, 1020 (3d Cir. 1987).  "However, even when an indictment provides two or more factual bases upon which a conviction could conceivably rest, normally, a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the

guilty verdict." Id. at 1019-20 (quotation omitted).  In certain instances, the district court must give an augmented unanimity instruction, such as "where the facts are exceptionally complex, or where the allegations in a single count are either contradictory or only marginally related to one another, or where there is a variance between the indictment and the proof at trial, or where there is a tangible indication of jury confusion." Id. (citations omitted).

The facts in this case were not exceptionally complex, the allegations were closely connected and not contradictory, there was little variance between the indictment and proof at trial, and no indication of jury confusion.  Thus, the Court did not err in applying the general rule in this case.  See United States v. Cusumano, 943 F.2d 305, 312 (3d Cir. 1991) (finding general instruction sufficient because government did not allege different set of facts and only possible confusion arose from disjunctive nature of the charge); see also United States v. Navarro, 145 F.3d 580, 591-92 (3d Cir. 1998) (following Cusumano).

**IV.     Efficacy of the Jury Polling Method**

When the foreperson announced the jury verdict, a timely request was made to have the jurors polled as to each defendant and as to each count.  Harrigan complains that the jury was not properly polled as to him in that the jury was not questioned separately concerning each of the two counts.  Each juror was only asked, "Is this your unanimous verdict as to Defendant Leroy Harrigan.?"  Harrigan contends that under these circumstances, the verdict against him must be reversed.

The purpose of polling the jury is to protect the substantial right to a unanimous verdict in a criminal case.  See United States v. Sturman, 49 F.3d 1275, 1282 (7th Cir. 1995).  Although

significant, the right to poll the jury is not itself a constitutional right. See United States v. Miller, 59 F.3d 417, 419-20 (3d Cir. 1995); Sturman, 49 F.3d at 1282.

Rule 31(d) of the Federal Rules of Criminal Procedure provides for the mandatory polling of each jury individually upon a timely request by the defendant.[1] "The right to poll the jury is one of long standing in both the federal . . . and most state courts." Government of the Virgin Islands v. Hercules, 875 F.2d 414, 417 (3d Cir. 1989). The object of polling in open court is to ensure that "no juror has been coerced or induced to sign a verdict to which he does not fully assent." Miller, 59 F.3d at 419. Rule 31(d), however, does not specify the manner in which the jury must be polled, except to state that it must be done individually. Id. at 419.

The trial court has some discretion in the manner in which it polls the jury. See id. at 420 (collecting cases). In the Third Circuit, it is within the district court's discretion " – keeping in mind the purposes of the polling rule – whether a separate inquiry should be conducted for each count of an indictment or complaint, for each of a number of defendants, or for a variety of issues." Id. at 421.

In this case, not only were the jurors polled individually, each juror also signed the verdict form. Requiring the jurors to sign the verdict form is a further procedural guarantee that the right to a unanimous jury verdict has been protected and that justice has been done. United States v. Causor-Serrato, 56 F. Supp.2d 1092, 1092-95 (N.D. Iowa 1999). The Court finds that the verdict form, together with each juror's individual response to the polling question, were sufficient "to

---

[1] Fed. R. Crim P. 31(d) provides: "Jury Poll. After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury."

test the uncoerced unanimity of the verdict by requiring each juror to answer for himself, thus creating individual responsibility, eliminating any uncertainty as to the verdict announced by the foreman." United States v. Gambino, 951 F.2d 498, 502 (2d Cir. 1991); see also United States v. Lustig, 555 F.2d 737, 746 (9th Cir. 1977) (holding that it was within court's discretion and not reversible error not to poll the jurors as to each count, notwithstanding defendant's request).

V.      Conclusion

Judgment of acquittal is not warranted on any of the grounds submitted. The evidence presented at trial was substantial and was sufficient for a reasonable jury to convict on Counts I and II. The disjunctive nature of the jury instructions and verdict form was proper, notwithstanding that Harrigan was charged in the conjunctive. The Court did not plainly err by not giving a specific instruction concerning jury unanimity as to the objects of the conspiracy. Finally, the jury was effectively and individually polled. Therefore the Court denies Harrigan's Motion for Judgment of Acquittal.

**ENTER:**

**DATED:**      February 1, 2008            _____/s/_____
                                            RAYMOND L. FINCH
                                            DISTRICT JUDGE